UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ILEEN CAIN,

                          Plaintiff,

         – against –

MANDL COLLEGE OF ALLIED HEALTH and
MEL WEINER,

                        Defendants.

**OPINION AND ORDER**

14-CV-1729 (ER)

---

Ramos, D.J.:

      This case arises from claims by Ileen Cain ("Plaintiff" or "Cain"), a *pro se* litigant against Mandl College of Allied Health ("Mandl") and its president, Mel Weiner ("Weiner")[1] (collectively, "Defendants"). Plaintiff alleges that Defendants discriminated against her on the basis of her disability by improperly terminating her enrollment in Mandl's surgical technologist program. Liberally construed, the Complaint asserts claims against Defendants for violations of § 504 of the Rehabilitation Act, the Americans with Disabilities Act ("ADA"), New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYSHRL"), New York City Human Rights Law, N.Y.C. Admin. Code § 8–101 *et seq.* ("NYCHRL"), New York Civil Rights Law, §§ 40–c, 40–d ("NYCRL"), the Violence Against Women Act ("VAWA"), and the Communications Act of 1934, along with harassment, retaliation, and aiding and abetting claims. Defendants now

---

[1] In Plaintiff's opposition papers, she indicates that she is only bringing claims against Weiner for aiding and abetting in violation of the NYSHRL, NYCHRL, and NYCRL. Pl.'s Mem. L. Opp., Doc. 23 at 24-25. Thus, the Court will not address Defendants' argument that Weiner cannot be held individually liable under the ADA or the Rehabilitation Act. *See* Defs.' Mem. L. Mot. Dismiss, Doc. 15 at 6.

move to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *See* Defs.' Mot. Dismiss, Doc. 14.  For the reasons discussed below, Defendant's motion to dismiss is GRANTED.

**I.     Background**

The Court accepts the following allegations as true for purposes of this motion.[2]

Plaintiff's son was murdered in 2005.  Compl. ¶ 6.  His death had a substantial effect on her daily activities, which resulted in Plaintiff's being diagnosed with post-traumatic stress disorder ("PTSD") in 2007.  *Id.*

Plaintiff received "services" from an entity that she refers to as the Adult and Continuation Educational Services Vocational Rehabilitation ("ACCESS VR"), an entity which "financially funds individuals with disabilities."[3]  *Id.* at ¶ 7.  Plaintiff was initially denied admission in Mandl's surgical technologist program because she was receiving financial assistance from ACCESS VR.  *Id.* at ¶ 1.  Instead, Mandl preferred students to enroll full-time with Pell grants, New York State Tuition Assistance Program awards, or unsubsidized loans.  *Id.*  Plaintiff sought the assistance of an ACCESS VR representative on May 2, 2012, who intervened on her behalf and helped her gain admission.  Pl.'s Mem. L. Opp., Doc. 23 at 3.

---

[2] Some of the allegations appear in documents attached to Plaintiff's opposition papers.  "Courts have held that it may be appropriate to consider materials outside of the Complaint in the *pro se* context . . . and, in particular, materials that a *pro se* plaintiff attaches to his opposition papers[.]"  *Ceara v. Deacon*, No. 13-CV-6023 (KMK), 2014 WL 6674559, at *8 (S.D.N.Y. Nov. 25, 2014) (internal citations omitted) (emphasis added); *see also Rodriguez v. McGinnis*, 1 F. Supp. 2d 244, 246-47 (S.D.N.Y. 1998) ("Although material outside a complaint generally is not to be taken into consideration on a motion to dismiss, the policy reasons favoring liberal construction of *pro se* complaints permit a court to consider allegations of a *pro se* plaintiff in opposition papers on a motion where, as here, those allegations are consistent with the complaint.").

[3] Presumably Plaintiff is referring to the Adult Career and Continuing Education Services-Vocational Rehabilitation.

Prior to her enrollment in Mandl in 2012, Plaintiff was interviewed by Weiner. *Id*. at 3-4, 14. During this interview, Weiner asked her why she was interested in becoming a surgical technologist. *Id*. at 4. Plaintiff responded by explaining that her son was murdered and that she was diagnosed with PTSD. *Id*. Once she was enrolled, she spoke "at length" about her son's death and her PTSD with a Mandl Resource Lab director named Allison. *Id*. at 8.

On June 12, 2012, Plaintiff informed Mandl's director of enrollment, Randi Senser ("Senser"), along with Weiner, that she was being teased, harassed, and stalked by an individual named Aisha Reid ("Ms. Reid") over the internet. *Id*. at 4, 9. Plaintiff suspects that Ms. Reid is the sister of Haaziq Reid ("Mr. Reid"), a Mandl student with whom Plaintiff had terminated a relationship. *Id*. Plaintiff also informed school officials that other students were mocking her, calling her a "kook" or "coo coo." Compl. ¶ 10. Senser never investigated Plaintiff's allegations. Doc. 23 at 5. Weiner told Plaintiff that he would address the class about her situation. *Id*. at 9. Indeed, Weiner confronted her class by reminding them that they are "tough" New Yorkers who have had to deal with racism and many types of discrimination. *Id*. He told the class that he has had to deal with subtle racist comments and that he expects the best of Mandl students. *Id*. Plaintiff interpreted his comments as indirectly instructing her to deal with the situation. *Id*. On July 24, 2012, Plaintiff approached a fellow student, identified as "Simon," and asked her if the two could discuss the harassment that was occurring. Compl. ¶ 16. Simon informed a Mandl professor, along with Weiner, that Plaintiff had attempted to speak to her regarding the harassment. *Id*. It is unclear whether Simon simply relayed Plaintiff's concerns to Mandl officials, or if she complained about any inappropriate behavior on the part of Plaintiff.

The following day, on July 25, 2012, Plaintiff was dismissed from Mandl. Doc. 23 at 5. Weiner told Plaintiff that she was not being dismissed for academic reasons, rather, she was

3

being terminated because she "has issues with herself." *Id*. In a letter to Plaintiff, dated a day later, she was informed that she was being administratively withdrawn from Mandl's surgical technologist program for the following reasons:

> As a first term student in Mandl for the past two and a half months, there have been numerous complaints regarding your behavior towards students and staff. As a result, there have been discussions with you, as well as reports, on how your demeanor affects others in the Mandl Community. Although you were warned in a letter dated July 18 in which you signed and received a copy about possible termination, you continue to engage in acrimonious behavior that is unbecoming [sic] a Mandl Student, future graduate and future employee in the Allied Health field.

Doc. 23, Ex. D. The letter cited an excerpt from the College Student Handbook, which states that a student may be terminated for "unseemly behavior that tends to distract other students and disrupt routine class procedure[.]" *Id.* The dismissal letter further indicated that, if Plaintiff chose to appeal her termination, she was required to do so in writing within five days. *Id*. On July 30, 2012, Defendants faxed Plaintiff's dismissal letter to an ACCESS VR supervisor and to a physician identified as Dr. Mark Feinstein. Doc. 23 at 5. Plaintiff claims she never personally received the letter from Mandl. *Id*. at 6.

Plaintiff contacted the Center for Independence of the Disabled, NY ("CIDNY") to advocate on her behalf after she was dismissed. *Id*. at 11. CIDNY requested an in-person meeting with Weiner to discuss the bullying and harassment she suffered, which Defendants ignored. *Id*. On November 1, 2012, Mandl did make an exception for Plaintiff and allowed her to submit a written appeal, despite the fact that the deadline had passed. Doc. 23, Ex. B. Nonetheless, her appeal for reinstatement was denied on January 4, 2013. *Id*. at Ex. E. The following month, on February 27, 2013, Plaintiff filed a complaint with the United States Department of Education's ("DOE") Office of Civil Rights, which was dismissed as untimely on

April 29, 2014.  Doc. 23 at 11; *see also id.* at Ex. A.  Although Plaintiff claims that she was never granted a hearing with respect to her termination, *id*. at 5, she later states that was granted an "administrative hearing" which took place on December 9, 2012.  *Id*. at 11.  Given that the hearing was held *before* Plaintiff filed her complaint with DOE, together with the fact that it was not attended by any individuals affiliated with Mandl, it is unclear what type of a proceeding Plaintiff is actually referring to.  *See id*.

## II. Discussion

### A. Rule 12(b)(6) Motion to Dismiss standard

When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).  The court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also id.* at 681 (citing *Twombly*, 550 U.S. at 551).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed."  *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 680.

The question in a Rule 12 motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 278 (2d Cir.1995)) (internal quotation marks omitted). "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits,'" and without regard for the weight of the evidence that might be offered in support of Plaintiff's claims. *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)).

The same standard applies to motions to dismiss *pro se* complaints. *See Zapolski v. Fed. Republic of Germany*, 425 F. App'x 5, 6 (2d Cir. 2011). The Court remains obligated to construe a *pro se* complaint liberally, *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011), and to interpret a *pro se* plaintiff's claims as raising the strongest arguments that they suggest. *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006). The obligation to be lenient while reading a *pro se* plaintiff's pleadings "applies with particular force when the plaintiff's civil rights are at issue." *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)). "However, even *pro se* plaintiffs asserting civil rights claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a right to relief above the speculative level." *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). A *pro se* plaintiff's pleadings still must contain "more than an unadorned, the defendant-unlawfully-harmed me accusation." *Iqbal*, 566 U.S. at 678. A complaint that "tenders naked assertion[s] devoid of further enhancement" will not suffice. *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted); *see*

6

*also Triestman*, 470 F.3d at 477 ("[P]*ro se* status 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'") (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). Additionally, as the Second Circuit recently noted, "[a] district court deciding a motion to dismiss *may* consider factual allegations made by a *pro se* party in his papers opposing the motion." *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) (emphasis added).

In addition to confining its consideration of a Rule 12(b)(6) motion to the facts stated in the complaint and in documents appended or incorporated by reference, a court may take into account matters of which judicial notice can be taken. *Leonard F. v. Israel Disc. Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999) (quoting *Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991)); *see also* Fed. R. Evid. 201. In order for a court to take judicial notice of a public document on a dismissal motion, the plaintiff must have relied on the terms and effect of the document in drafting the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (citing *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)). Accordingly, it is routine for courts to take judicial notice of court documents, "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).

Defendants attached several documents to their reply papers, including records indicating that Plaintiff was placed on disciplinary probation by Mandl in July 2012, before she was dismissed. Defs.' Reply Mem. L., Doc. 25, Ex. 1. The first two documents include an infraction notice dated June 12, 2012 and a letter informing Plaintiff that she was being placed on disciplinary probation dated July 18, 2012. Doc. 25, Ex. 1. These records were already included in Plaintiff's opposition papers and will therefore be considered. *See* Doc. 23, Ex. C. However, the third document—an infraction notice dated July 10, 2012—is not attached to

7

Plaintiff's papers, incorporated by reference, or subject to judicial notice.  Defendants also submitted a Report and Recommendation written by Magistrate Judge James C. Francis IV, dated June 26, 2014, recommending that the court dismiss an action brought by Plaintiff against Atelier Esthetique and a number of individual defendants.  Defs.' Reply Mem. L., Doc. 25, Ex. 2; *see also Cain v. Atelier Esthetique et al.*, 13-CV-7834, Doc. 33.  The case involves a substantially similar factual predicate and set of claims, namely Plaintiff's dismissal from a vocational program for what she claimed to be discriminatory reasons.  *See id.*  However, it was brought against a completely different group of defendants and has no bearing on this case.  Therefore, the Court will not consider Defendants' attachments for the purposes of the instant motion.

### B. Claims One and Two:  Discrimination in Violation of the Rehabilitation Act and the ADA

The Court reads the Complaint as alleging that the Defendants violated her rights under Title II of the ADA and § 504 of the Rehabilitation Act.

In order to establish a *prima facie* violation of these Acts, a plaintiff must show:  (1) "that she is a qualified individual with a disability;" (2) "that the defendants are subject to one of the Acts;" and (3) "that she was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of her disability."[4]  *Harris v. Mills*, 572 F.3d 66, 73-74 (2d Cir. 2009) (quoting *Powell v. Nat'l*

---

[4] Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving federal assistance[.]" 29 U.S.C. § 794. Correspondingly, Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

*Bd. of Med. Examiners*, 364 F.3d 79, 85 (2d Cir.)) *opinion corrected*, 511 F.3d 238 (2d Cir. 2004)). Although the elements of ADA and Rehabilitation Act claims are substantially identical, there is one notable difference: "[U]nder the Rehabilitation Act, the defendant must have discriminated against the plaintiff solely because of the plaintiff's disability, whereas under the ADA, it is enough if the plaintiff's disability was a motivating factor in the discrimination." *K.H. v. Vincent Smith Sch.*, No. CV 06-0319(ERK) (JO), 2006 WL 845385, at *11 (E.D.N.Y. Mar. 29, 2006) (internal citation and quotation marks omitted). Additionally, under the Rehabilitation Act, the plaintiff must show that the defendants receive federal funding. *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003) (citing *Doe v. Pfrommer*, 148 F.3d 73, 82 (2d Cir. 1998)); *see also Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 146 n.6 (2d Cir. 2002) ("Apart from the Rehabilitation Act's limitation to denials of benefits 'solely' by reason of disability and its reach of only federally funded—as opposed to 'public'—entities, the reach and requirements of both statutes are precisely the same.").

Defendants argue that Plaintiff's claims under the Rehabilitation Act and the ADA should fail because the Complaint does not allege that Defendants were aware that she was diagnosed with PTSD. Defs.' Mem. L. Mot. Dismiss, Doc. 15 at 4. In effect, they are claiming that Plaintiff has failed to show that she was discriminated against "by reason of her disability," under the third prong of the test. However, although the Complaint lacked any allegations that Defendants knew that Plaintiff suffers from PTSD, her opposition papers present additional facts which the Court is allowed to consider given Plaintiff's *pro se* status.[5] According to Plaintiff,

---

[5] Defendants did not respond to Plaintiff's new allegations in their reply papers. In fact, their reply brief consists of nothing more than a two-page letter to the Court rehashing the arguments made in their original motion, not including the two attachments which the Court will not consider in ruling on a motion to dismiss. *See* Doc. 25.

she personally told both Weiner and "Allison," the Mandl resource lab director, that she was diagnosed with PTSD.[6] *See* Doc. 23 at 4, 8, 14. Since Plaintiff has alleged that Weiner himself knew about her PTSD, it can be reasonably inferred that the individuals responsible for Plaintiff's dismissal from Mandl were aware of her diagnosis. *See Alexiadis v. New York Coll. of Health Professions*, 891 F. Supp. 2d 418, 430 (E.D.N.Y. 2012) (concluding that, where the plaintiff told the Director of Student Services, the Dean of Students, and his supervisor in the Office of Admissions that he was HIV-positive, there was sufficient evidence from which a rational factfinder could infer that those responsible for the adverse actions taken against him were aware of his condition).

Nonetheless, although Plaintiff has alleged facts that show Defendants were aware of her PTSD, she does not establish any causal connection between her dismissal from Mandl and her PTSD.[7] The Complaint states that Weiner informed Plaintiff that she was being dismissed due to "numerous complaints from staff and students."[8] Compl. ¶ 18. As explained in her opposition papers, Plaintiff's dismissal coincided with her conversation with Simon about the bullying that she was allegedly enduring. Doc. 23 at 10. When Weiner told Plaintiff that Mandl was dismissing her, he purportedly admonished her for speaking with another student regarding the matter. *Id*. Plaintiff reasons that, had she not spoken to Simon, Mandl would not have dismissed

---

[6] Plaintiff also claims that she spoke about her PTSD with an individual named Raquel Garcia. Doc. 23 at 8. However, she does not indicate whether this person was associated with Mandl.

[7] Throughout her Complaint and opposition papers, Plaintiff frequently notes that she was denied enrollment in Mandl's surgical technologist program because she was receiving tuition assistance from ACCESS VR. *See* Compl. ¶ 1, Doc. 23 at 3, 7, 28. However, Plaintiff was ultimately admitted to the program. Furthermore, she does not allege any additional facts to establish that she was denied enrollment on account of her disability.

[8] Weiner also allegedly told Plaintiff that she "has issues with herself." *Id*. at ¶ 17. However, without further context, this statement does not suggest that Weiner was referring to Plaintiff's PTSD.

10

her the following day. *Id*. at 19.  However, she does not describe her interaction with Simon, other than to say that she wanted to talk to Simon about the harassment that she was experiencing.  Compl. ¶ 16, *see also* Doc. 23 at 5, 10.  Nor does Plaintiff identify what it was about her conversation with her that resulted in her dismissal.  Meanwhile, the dismissal letter cites Plaintiff's "acrimonious" behavior towards other students and staff as the reason for her termination.  Doc. 23, Ex. D.  There is no indication that Plaintiff's PTSD caused her to behave in such a way, or that it otherwise had any bearing on her dismissal.

To the extent that Plaintiff claims that Defendants discriminated against her by failing to take action in response to her allegations of harassment by other students, her claim also fails.  Indeed, "deliberate indifference to pervasive, severe disability-based harassment that effectively deprived a disabled student of access to the school's resources and opportunities would be actionable under Section 504 and Title II."  *K.M. ex rel. D.G. v. Hyde Park Cent. Sch. Dist*., 381 F. Supp. 2d 343, 360 (S.D.N.Y. 2005).  However, Plaintiff has not alleged sufficient facts to establish that the harassment she experienced was based on her disability.[9]  Nor has she shown that the harassment deprived her of access to the school's resources and opportunities.  For example, in *Preston v. Hilton Cent. Sch. Dist*., 876 F. Supp. 2d 235, 242 (W.D.N.Y. 2012), "[t]he alleged harassing conduct included the use of insults which specifically referenced the perceived nature of [the student's] disability [Asperger's Syndrome], such as 'fucking retard' and 'autistic piece of shit,' as well as objects being thrown at him, and ridicule concerning his work in class[.]"  The student was so affected by the harassment that he "discontinued attending school,

---

[9] Plaintiff broadly states in the beginning of her Complaint that the harassment against her was based on her "perceived disability."  Compl. at 2.  However, nowhere else in the Complaint does she allege any facts that connect the harassment and stalking with her PTSD.

became profoundly disturbed, and was so emotionally crippled that he was unable to return to class or complete final exams." *Id*. The only harassment which Plaintiff specifically identifies is being called a "kook" or "coo coo." Compl. ¶ 10. While such stray remarks are certainly unfortunate, they do not clearly implicate her disability or rise to the level necessary to impose liability on Defendants for deliberate indifference.

Therefore, Plaintiff's first and second claims are dismissed without prejudice.[10]

### C. Claim Three: Retaliation in Violation of the ADA

The ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). To state a claim for retaliation under the ADA, a plaintiff must establish that: (1) "a plaintiff was engaged in protected activity;" (2) "the alleged retaliator knew that plaintiff was involved in protected activity;" (3) "an adverse decision or course of action was taken against plaintiff;" and (4) "a causal connection exists between the protected activity and the adverse action."[11] *Weixel,* 287 F.3d at 148 (citation and internal quotation marks omitted). "Claims for retaliation are analyzed under the same burden-shifting framework established for Title VII cases." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002). The term "protected activity" refers to an "action taken to protest or oppose statutorily prohibited discrimination." *Cruz v. Coach Stores, Inc.,* 202

---

[10] Defendants do not contest whether Plaintiff's is disabled under the ADA and Rehabilitation Act, nor do they maintain that they are not subject to the Acts.

[11] The same standard applies to retaliation claims raised under § 504 of the Rehabilitation Act, *see Weixel*, 287 F.3d at 148*,* although Plaintiff only alleges retaliation under the ADA.

12

F.3d 560, 566 (2d Cir. 2000), *superseded by regulation on separate grounds*. "In order to constitute protected activity, a plaintiff's complaint must be sufficiently pointed to be reasonably understood as a complaint of discrimination." *Goonewardena v. N. Shore Long Island Jewish Health Sys.*, 11 Civ. 2456 (MKB), 2013 WL 1211496, at *9 (E.D.N.Y. Mar. 25, 2013) (citation and internal quotation marks omitted). Nonetheless, on a motion to dismiss, "a plaintiff need not specifically plead every element of a prima facie case. A plaintiff need only allege facts that could establish a causal nexus between a protected activity and the adverse employment action." *Pahuja v. Am. Univ. of Antigua*, No. 11 CIV. 4607 (PAE), 2012 WL 6592116, at *11 (S.D.N.Y. Dec. 18, 2012) (citing *Dorsey v. Fisher*, 468 F. App'x 25, 27 (2d Cir. 2012)).

Defendants once again argue that Plaintiff's retaliation claim should be dismissed because they were unaware that she was diagnosed with a disability, nor did they regard Plaintiff as disabled. Doc. 15 at 4. However, as noted above, Plaintiff stated additional facts in her opposition papers establishing that she told individuals associated with Mandl, including its president, about her PTSD. *See* Doc. 23 at 4, 8, 14. Furthermore, the question in a retaliation claim is not whether Defendants knew that Plaintiff is disabled; it is whether Defendants knew that Plaintiff was engaged in a protected activity and took some adverse action against her because of it.

As a general matter, in cases involving complaints of bullying, a plaintiff does not state a claim for retaliation if she does not allege that she was being harassed on account of her disability. *See Eskenazi-McGibney v. Connetquot Cent. Sch. Dist.*, No. 14-CV-1591 (ADS) (GRB), 2015 WL 500871, at *11 (E.D.N.Y. Feb. 6, 2015) (finding that, although the parents complained about the bullying of their child, they failed to adequately allege a "protected activity" under the ADA and § 504 because they did not complain that the bullying was on

13

account of his disability).  Here, the Complaint broadly claims in conclusory fashion that Mandl retaliated against Plaintiff after she complained about being harassed and bullied based on her "perceived disability."  Compl. at 2.[12]  Later on in the Complaint, Plaintiff specifies that she was terminated for speaking with Simon, a fellow student, about being harassed and bullied.  Doc. 23 at 5, 18, 10.

Yet, Plaintiff never alleges any facts that establish that her interaction with Simon had anything to do with her disability.  Furthermore, Plaintiff does not allege that Defendants were aware that the harassment she suffered was connected to her PTSD.  If anything, the facts alleged in the Complaint, along with Plaintiff's papers, suggest that the harassment was associated with her decision to terminate her relationship with Ms. Reid's brother.  *See* Compl. ¶ 12-13.  Title VII case law is instructive here.  In the Title VII context, "implicit in the requirement that the employer have been aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII."  *Kelly v. Howard I. Shapiro & Associates Consulting Engineers, P.C.*, 716 F.3d 10, 15 (2d Cir. 2013). "Although particular words such as 'discrimination' are certainly not required to put an employer on notice of a protected complaint, neither are they sufficient to do so if nothing in the substance of the complaint suggests that the complained-of activity is, in fact, unlawfully discriminatory."  *Id*. at 17.  Putting aside the question of whether speaking to another student about disability-based harassment by her peers constitutes a "protected activity," Plaintiff has not adequately alleged that Defendants retaliated against her for engaging in a "protected activity."  While Plaintiff's papers certainly establish that Defendants knew about her disability

---

[12] Given that this portion of the Complaint is unnumbered, the Court refers to the ECF page number.

14

and were aware that harassment was taking place against Plaintiff, it never claims that they knew that the conduct she was complaining about was on account of her PTSD.

Furthermore, the dismissal letter, which Plaintiff attached to her opposition papers, indicates that she was dismissed due to "numerous complaints" regarding her behavior towards other students and staff, which violated the student code of conduct.  Doc. 23, Ex. D.  Plaintiff also attached a separate letter which indicates that, prior to her dismissal, she had been placed on probation for her refusal to follow a professor's directions and abusive language.  *Id*. at Ex. C. The probation letter states that any additional violation of the student code of conduct during her probation could lead to immediate termination.  *Id.*  Although Plaintiff states that she was "forced" to sign an infraction form, she does not specify whether it was in connection with being placed on probation.  *See* Doc. 23 at 9.  In fact, she does not make any attempt to deny or explain the contents of the probation and dismissal letters beyond claiming that she was not previously informed that there were "numerous complaints" from students and staff about her.  *Id*. at 6.

The various ambiguities and inconsistencies in the Complaint are fatal to her claim. Accordingly, Plaintiff's third claim for retaliation is dismissed without prejudice.

### D. Claim Twelve:  New York Civil Rights Law, the Violence Against Women Act, and the Communications Act

Defendants further argue that Plaintiff's twelfth claim must be dismissed because it is "incomprehensible" and fails to put them on notice of the basis for the cause of action.  Doc. 15 at 6.  Indeed, the nature of Plaintiff's claim "and the ground upon which it rests" cannot be determined from the Complaint as currently pleaded.  *See Twombly*, 550 U.S. at 555.  Without any further explanation, Plaintiff's twelfth claim alleges violations of the NYCRL, § 113 of the VAWA, and "the telecommunications harassment statute that is rooted in the Communications

Act of 1934." *See* Compl. 8. Plaintiff does not provide a factual basis for the claims brought under the Communications Act and VAWA, nor does she specify whether her twelfth claim under the NYCRL is separate from the discrimination claim she brings under the same statute in her eleventh claim. Since Plaintiff has failed to give Defendants "fair notice of what the . . . claim is and the grounds upon which it rests," her twelfth claim must also be dismissed. *See Twombly*, 550 U.S. at 555 (internal citation and quotation marks omitted).

### E. State Law Claims

In addition to her claims under the Rehabilitation Act, ADA, VAWA, and the Communication Act, Plaintiff's Complaint may be liberally construed as alleging state law claims for violations of the NYSHRL, NYCHRL, and NYCRL in her Fourth through Eleventh claims.[13] Under 28 U.S.C. § 1367(c)(3), if the Court has dismissed all of the claims over which it has original jurisdiction, it may decline to exercise jurisdiction over any non-federal claims over which it could have exercised supplemental jurisdiction.

Subject matter jurisdiction in the instant action is based on federal question jurisdiction. 28 U.S.C. § 1331. All of the Complaint's federal claims must be dismissed. *See* supra Part II.B-D. Because no federal claims remain that are subject to a merits determination by this court, it would be inappropriate to adjudicate Plaintiff's state law claims. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well."); *McGugan v. Aldana-Bernier*, No. 11-CV-00342 (TLM), 2012 WL 1514777, at *8 (E.D.N.Y. Apr. 30, 2012) *aff'd*, 752 F.3d 224 (2d Cir. 2014) ("[W]hen all federal claims are eliminated in the early stages of litigation, the balance of factors

---

[13] In her opposition papers, Plaintiff additionally claims that Defendants committed defamation. *See* Doc. 23 at 25-26. However, the Complaint does not present any such claim.

16

generally favors declining to exercise pendent jurisdiction over remaining state law claims and dismissing them without prejudice."). Therefore, all non-federal claims contained in Plaintiff's Second Amended Complaint are hereby dismissed as well.

### F. Leave to Amend

The Second Circuit has instructed Courts not to dismiss a complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Shabazz v. Bezio*, 511 F. App'x 28, 31 (2d Cir. 2013) (quoting *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009)) (internal quotation marks omitted). Given her *pro se* status, the Court is granting Plaintiff an opportunity to amend her Complaint within thirty (30) days of the date of this order. The amended complaint must be captioned as an "Amended Complaint," and bear the same docket number as this Order.

## III. Conclusion

For the reasons set forth above, Defendants' motion to dismiss is GRANTED. Plaintiff is granted leave to amend the Complaint. No summons shall issue at this time and all further proceedings shall be stayed for 30 days. If Plaintiff fails to file an amended complaint within thirty days pursuant to this order, the Court shall dismiss this complaint.

The Clerk of the Court is respectfully directed to terminate the motion, Doc. 14, and to mail a copy of this Opinion and Order to Plaintiff.

Furthermore, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Opinion and Order would not be taken in good faith; therefore, *in forma pauperis* status is denied for purposes of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

It is SO ORDERED.

Dated:   May 29, 2015
         New York, New York

                                                       _____
                                                       Edgardo Ramos, U.S.D.J.