UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ILEEN CAIN,

                              Plaintiff,

– against –

MANDL COLLEGE OF ALLIED HEALTH,
MANDL COLLEGE, INC., MEL WEINER,
STEW WEINER, and AISHA REID,

                              Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED: 9/30/2016

**OPINION AND ORDER**

14 Civ. 1729 (ER)

Ramos, D.J.:

      *Pro se* plaintiff Ileen Cain ("Plaintiff" or "Cain") was enrolled in the surgical technologist program at Mandl College of Allied Health ("Mandl") for approximately three months in 2012. She brings this action against Mandl; Mandl College, Inc. ("MCI"); Mandl's President, Mel Weiner ("M. Weiner"); its Director of Operations, Stew Weiner ("S. Weiner"); and a fellow student, Aisha Reid ("Reid," and collectively, "Defendants"), alleging that Defendants discriminated against her on the basis of her disability by harassing her and allowing fellow students to harass her, and by retaliating against her when she complained of the abuse. In her Amended Complaint, Cain presses thirteen claims against Defendants, alleging violations of Section 504 of the Rehabilitation Act, the Americans with Disabilities Act ("ADA"), New York State Human Rights Law ("NYSHRL"), New York City Human Rights Law, ("NYCHRL"), New York Civil Rights Law ("NYCRL"), and common law defamation. Doc. 30. Defendants now move to dismiss the Amended Complaint with prejudice pursuant to Rule

12(b)(6) of the Federal Rules of Civil Procedure. *See* Docs. 40, 71. For the reasons discussed below, Defendants' motions to dismiss are GRANTED. Plaintiff will be given an opportunity to file a Second Amended Complaint.

## I. FACTUAL BACKGROUND

The Court accepts the following allegations from the Amended Complaint ("Am. Compl.") (Doc. 30) as true for purposes of this motion.[1]

Plaintiff has been diagnosed with Post-Traumatic Stress Syndrome ("PTSD"), which she developed after the murder of her son. Am. Compl. at 5. Plaintiff does not explain how her PTSD manifests. As a result of that diagnosis, however, she was awarded Social Security Disability benefits and secured tuition assistance from the Office of Adult Career and Continuing Education Services – Vocational Rehabilitation ("ACCES-VR") of the New York State Education Department. *Id*. at 5, 48. Her counselor at ACCES-VR was Ruby Jackman ("Jackman"). *Id*. at 4.

At some point no later than mid-March 2012 (the Amended Complaint does not specify), Plaintiff began the process of applying to the surgical technologist program at Mandl. *See id.* at 4–7. As part of that process, in March of 2012, she interviewed with Mandl President M. Weiner. *Id*. at 5. During the interview, in response to his question as to how she intended to pay the cost of the program, she informed him about the PTSD diagnosis "due to the murder of her son" and the benefits she was receiving as a result, including from ACCES-VR. *Id*. She also informed him that she had been granted a Federal Pell Grant and a New York State Tuition Assistant Program ("TAP") grant, which she was required to apply for pursuant to ACCES-VR.

---

[1] Due to Plaintiff's failure to number the paragraphs of the Amended Complaint in any logical way—some are not numbered at all, others are delineated with capital or lower-case letters, and there are a number of typographical errors with respect to the paragraphs that are numbered—the Court will refer to the pagination of the Amended Complaint on the ECF system.

*Id.* By letter dated March 23, 2012, Mandl's Director of Operations S. Weiner mailed Jackman a letter in which he advised that Cain had interviewed for the surgical technologist program, and that she had the "qualification[s] to make a good Surgical Technologist." *Id.* at 59. The letter also detailed the cost breakdown of the program, and indicated that Mandl will process Cain's application as soon as they received certain information from ACCES-VR. *Id.*

Plaintiff alleges that in April of 2012 she returned to Mandl to complete the financial aid and enrollment process but S. Weiner "prevented" her from doing so, allegedly telling her that ACCES-VR did not want her to apply for student loans. *Id.* at 5. Plaintiff alleges that S. Weiner then "furthered the . . . disability discrimination" by: (1) requiring her to pay the enrollment fee; (2) preventing her from enrolling because ACCES-VR was not paying the entire tuition; and (3) hindering her enrollment by inquiring as to why ACCES-VR was not paying the entire tuition. *Id.* at 6. Plaintiff alleges that in a telephone call with Jackman, S. Weiner tried to initiate a conversation about Plaintiff's "mental status" but Jackman declined, citing the lack of an executed consent form from Plaintiff. *Id.* at 6–7, 32. Plaintiff also learned, after receiving documents from ACCES-VR in connection with this litigation, that during another telephone conversation with Jackman, S. Weiner "slandered" Plaintiff by stating that she was "in the waiting room creating a scene," an allegation Plaintiff disputes. *Id.* at 7, 27.

Plaintiff was ultimately admitted to the program, but alleges that she was made to endure an "ordeal" during the enrollment process due to her "disability or perceived disability," causing her a "great deal of embarrassment and emotional distress." *Id.* at 7. She also alleges that she was only allowed to enroll after the intervention of Jackman, though she is "unaware of what intervention measures" Jackman took. *Id.*

3

Plaintiff was enrolled at Mandl during the months of May, June, and July 2012. According to Cain, in approximately June of 2012, she became the victim of an orchestrated campaign of harassment and discrimination by her fellow students. Specifically, Plaintiff alleges that Defendant Reid, another student in the surgical technologist program, organized the campaign against her both on campus and off campus via cyber-stalking. *Id.* at 11. As part of that harassment, Plaintiff was mocked, teased, and called a "kook" and "coo coo." *Id.* at 7–8, 11. Plaintiff alleges that she had never met Reid prior to enrolling at Mandl, but Reid apparently knew who Plaintiff was, because Plaintiff had briefly dated Reid's brother, Haaziq Reid, in March of 2012. *Id.* at 13. Plaintiff terminated the relationship with Haaziq in April of 2012, prior to her enrollment at Mandl. *Id.* While they were dating, Plaintiff shared with Haaziq that she receives Social Security disability benefits "due to the murder of her son." *Id.*

According to Plaintiff, the mocking she was subjected to had a profoundly deleterious effect on her, causing her to feel isolated and directly affecting her performance in the surgical lab, because students were required to work in teams and the other students refused to interact with her. *Id.* at 11–12. In June of 2012, Plaintiff began informing the Director of the resource lab about the harassment on a daily basis, including Reid's leadership role in it. *Id.* at 13. Plaintiff reportedly sat in the resource lab Director's office "every day and cried." *Id.*

The harassment eventually led to a number of incidents involving Plaintiff, three of which she describes specifically in the Amended Complaint. In the first, which took place in June of 2012, she had "an exchange of words" with a fellow student named Steven as a result of the "torment" she was experiencing at his hands and the hands of the other students. *Id.* at 10–11. On June 12, 2012, following the incident, she was summoned to the office of President M. Weiner where she met with him and Randi Senser, Mandl's Director of Enrollment. *Id.* at 11,

4

63. Steven was not similarly summoned. *Id.* at 11. According to Plaintiff, she explained to them that the incident resulted from the mocking and harassment being directed at her, and that Reid was responsible for organizing it. *Id.* at 11. Plaintiff was forced to sign an infraction report for her "disruptive behavior" and "refusal to follow directions of instructor or staff." *Id.* at 10, 63. The report is also signed by Allison Wright, the Academic Dean, and Dr. Jaffri, an instructor (presumably of the class in which the incident took place). *Id.* at 63.

M. Weiner agreed to speak to the class, but he did not specifically address Plaintiff's claims of harassment. *Id.* at 11. Instead, he spoke generally about having been himself the subject of racism, noting that New Yorkers are "tough" and that he expected great things from his students. *Id.*

The second incident took place in July 2012, in the operating room of the surgical lab of instructor Romanof.[2] According to Plaintiff, on that occasion the students were again refusing to interact with her despite the fact that the class was engaged in a team exercise. *Id.* at 12. Plaintiff alleges that she told instructor Romanof about the harassing treatment, and then left the lab to report the treatment to Dr. Jaffri, the Director of the surgical technologist program. *Id.* However, instructor Romanof falsely reported to M. Weiner and Dr. Jaffri that Plaintiff had simply left the operating room and used obscene language. *Id.* After the incident, she was once again summoned to meet with M. Weiner and asked to sign an infraction form. *Id.* at 12, 64. The infraction form she was presented is dated July 18, 2012 and again lists two infractions: "disruptive behavior"/"obscene language," and "refusal to follow directions of instructor or staff." *Id.* at 64. The form also noted: "Very disruptive; doesn't follow instructions . . . As per

---

[2] Although Plaintiff refers to instructor "Romong" in her Amended Complaint, other documents she attaches refer to the instructor as "Romanof." Am. Compl. 63, 66. The Court refers to the instructor as "Romanof" for consistency.

Mr. Weiner[,] Ms. Cain is on probation & if she violates again she would be <u>terminated</u>." *Id.* (emphasis in original). Plaintiff refused to sign the form and alleges that she disputed the allegations to M. Weiner in the presence of Dr. Jaffri and instructor Romanof. *Id.* at 12.

By hand-delivered letter also dated July 18, 2012, Plaintiff was advised that she was being placed on disciplinary probation from July 18 until the last day of the fall 2012 semester. *Id.* at 12, 66. The letter informed her that she was being put on probation because of her refusal to follow the directions of instructor Romanof and her use of abusive language. *Id.* at 66. It also warned her that "any additional violation of the student code of conduct during . . . [her] probation may lead to immediate termination from the college." *Id.*

The third incident that Plaintiff highlights took place on July 24, 2012, less than one week after she received the probation letter. On that day, Plaintiff asked a fellow student in the surgical technologist program, a female named Simon, if they could talk about the harassment and mocking, including Plaintiff being referred to as "coo coo" and a "kook." *Id.* at 15. Plaintiff alleges that she approached Simon because, as a fellow student and a woman, she felt she could solicit information from her concerning the discrimination issues she was facing. *Id.* The Amended Complaint does not describe Simon's reaction to the solicitation, but Simon informed M. Weiner and Dr. Jaffri that Cain tried to speak to her regarding the harassment. *Id.* The following day, July 25, 2012, Plaintiff was again summoned to meet with M. Weiner and was told she was being expelled from the school. *Id.* Plaintiff alleges that M. Weiner told her that she had "no right" to speak to Simon and said, "how dare [you] speak to any student regarding the matter." *Id.* He advised her that she was not being expelled for academic issues, but rather "implied he could not afford to have Plaintiff on any of the surgical work sites" and stated that he believes that she has "issues with herself." *Id.*

By certified letter dated July 26, 2012, and signed by Shanthi Konkoth, Mandl's Vice President for Academic Affairs, Plaintiff was formally informed of her termination. *Id.* at 46. The letter noted:

> As a first term student in Mandl for the past two and a half months, there have been numerous complaints regarding your behavior towards students and staff. As a result, there have been discussions with you, as well as reports, on how your demeanor affects others in the Mandl Community. Although you were warned in a letter dated July 18 in which you signed and received a copy about possible termination, you continue to engage in acrimonious behavior that is unbecoming a Mandl student, future graduate and future employee in the Allied Health field.

*Id.* The letter cited an excerpt from the College Student Handbook, which states that a student may be terminated for "unseemly behavior that tends to distract other students and disrupt routine class procedure." *Id.* The dismissal letter further indicated that, if Plaintiff chose to appeal her termination, she was required to do so in writing within five days. *Id.*

Plaintiff asserts that despite her having advised Defendants of the harassment to which she was being subjected throughout her time at the school, the Mandl administration did nothing to investigate the matter. *Id.* at 13, 17.

Subsequent to her termination, beginning in approximately October 2012, Plaintiff enlisted the assistance of the Center for Independence of the Disabled in New York ("CIDNY"), who advocated on her behalf for an appeal of her termination despite the fact that the five-day deadline for filing an appeal had passed. *Id*. at 34–39. By email dated November 1, 2012, Maritza Mercado, Mandl's Director of Compliance, advised a representative of CIDNY that an exception had been made for Plaintiff and that she could submit an appeal. *Id.* at 43. The email referred to the guidelines for submitting such appeals and noted that the appeal would be reviewed by the President who will decide whether to reverse or affirm the sanction, and that in

matters of termination, "the President's decision is final and without further appeal." *Id.*  By letter dated January 4, 2013, Shanthi Konkoth informed Plaintiff that "after extensive deliberation of [her] case, the Student Grievance Committee ha[d] decided to deny [her] appeal for reinstatement," which decision was upheld by President M. Weiner. *Id*. at 41.  The letter further stated that the decision was final. *Id.*

## II.  PROCEDURAL HISTORY

Plaintiff filed her initial Complaint on March 4, 2014, naming only Mandl and M. Weiner as defendants.  Doc. 2.  Much like the instant Amended Complaint, the original Complaint alleged violations of Section 504 of the Rehabilitation Act, the ADA, the NYSHRL, the NYCHRL, and the NYCRL.  In addition, the original Complaint alleged violations of the Violence Against Women Act ("VAWA") and the Communications Act of 1934, along with harassment and aiding and abetting claims.  By Opinion and Order entered on May 29, 2015 (the "May 29 Order"), this Court dismissed the Complaint without prejudice.  Doc. 27.  Specifically, in the May 29 Order, the Court dismissed Plaintiff's discrimination claims, in part, because she did "not establish any causal connection between her dismissal from Mandl and her PTSD," and did "not allege[] sufficient facts to establish that the harassment she experienced was based on her disability." *Id*. at 10–11.  Similarly, the Court dismissed the retaliation claims on the basis that Plaintiff "never allege[d] any facts that establish[ed] that her interaction with Simon had anything to do with her disability," and did "not allege that Defendants were aware that the harassment she suffered was connected to her PTSD." *Id.* at 14.  However, the Complaint was dismissed without prejudice because the Second Circuit has instructed courts not to dismiss a complaint "without granting leave to amend at least once when a liberal reading of the complaint

gives any indication that a valid claim might be stated." *Id.* at 17 (quoting *Shabazz v. Bezio*, 511 F. App'x 28, 31 (2d Cir. 2013)).

Plaintiff filed the Amended Complaint on July 6, 2015, this time adding MCI, S. Weiner, and Reid as defendants, and dropping the VAWA and Communications Act charges. Doc. 30. Defendants Mandl and M. Weiner moved to dismiss the Amended Complaint on September 22, 2015. Doc. 40. Defendant S. Weiner moved to dismiss the Amended Complaint on January 27, 2016. Doc. 71.[3]

## III. LEGAL STANDARD

When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). The court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also id.* at 681 (citing *Twombly*, 550 U.S. at 551). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the plaintiff has not "nudged [his]

---

[3] Although attempts were made, Defendant Reid was never served with the Amended Complaint, *see* Doc. 80, and she has not otherwise appeared in this action. Since the time to serve Defendants has long elapsed, the Court dismisses Plaintiff's claims against Reid without prejudice. Fed. R. Civ. P. 4(m).

claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 680.

The question in a Rule 12 motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 278 (2d Cir. 1995)) (internal quotation marks omitted). "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits,'" and without regard for the weight of the evidence that might be offered in support of Plaintiff's claims. *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)).

The same standard applies to motions to dismiss *pro se* complaints. *See Zapolski v. Fed. Republic of Germany*, 425 F. App'x 5, 6 (2d Cir. 2011). The Court remains obligated to construe a *pro se* complaint liberally, *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011), and to interpret a *pro se* plaintiff's claims as raising the strongest arguments that they suggest. *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006). The obligation to be lenient while reading a *pro se* plaintiff's pleadings "applies with particular force when the plaintiff's civil rights are at issue." *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)). "However, even *pro se* plaintiffs asserting civil rights claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a right to relief above the speculative level." *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). A *pro se* plaintiff's pleadings still must contain "more than an unadorned, the defendant-unlawfully-harmed me accusation." *Iqbal*,

566 U.S. at 678.  A complaint that "tenders naked assertion[s] devoid of further enhancement" will not suffice.  *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted); *see also Triestman*, 470 F.3d at 477 ("[P]*ro se* status 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'") (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).  Additionally, as the Second Circuit recently noted, "[a] district court deciding a motion to dismiss *may* consider factual allegations made by a *pro se* party in his papers opposing the motion."  *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) (emphasis added).

## IV. DISCUSSION

### A. Claims for Discrimination and Retaliation in Violation of the ADA and the Rehabilitation Act (Counts One Through Four)

Plaintiff alleges that Defendants violated her rights under Title III of the ADA and Section 504 of the Rehabilitation Act.  Am. Compl. at 18–19.  Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns . . . or operates a place of public accommodation."  42 U.S.C. § 12182(a).  Correspondingly, Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).

In order to establish a *prima facie* violation of these Acts, a plaintiff must show:  (1) "that she is a qualified individual with a disability;" (2) "that the defendants are subject to one of the Acts;" and (3) "that she was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason

of her disability." *Harris v. Mills*, 572 F.3d 66, 73–74 (2d Cir. 2009) (quoting *Powell v. Nat'l Bd. of Med. Examiners*, 364 F.3d 79, 85 (2d Cir.), *opinion corrected*, 511 F.3d 238 (2d Cir. 2004)).[4] To state a claim for retaliation under the Acts, a plaintiff must establish that: (1) she "was engaged in protected activity;" (2) "the alleged retaliator knew that plaintiff was involved in protected activity;" (3) "an adverse decision or course of action was taken against plaintiff;" and (4) "a causal connection exists between the protected activity and the adverse action." *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 148 (2d Cir. 2002) (citation and internal quotation marks omitted).

Ultimately, the Court dismissed the original Complaint on the basis that Plaintiff failed to sufficiently allege a causal connection between either her harassment or dismissal and her PTSD. Since this Court issued the May 29 Order, the Second Circuit issued *Littlejohn v. City of New York*, 795 F.3d 297 (2d Cir. 2015). *Littlejohn* specifically addressed the standard for pleading discrimination claims that are, like the ADA and the Rehabilitation Act, subject to the *prima facie* case framework elaborated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981), *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993), and *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000). *See Littlejohn*, 795 F.3d at 307–11.[5] *Littlejohn* clarified

---

[4] As the Court noted in the May 29 Order, although the elements of ADA and Rehabilitation Act claims are substantially identical, there is one notable difference: "[U]nder the Rehabilitation Act, the defendant must have discriminated against the plaintiff solely because of the plaintiff's disability, whereas under the ADA, it is enough if the plaintiff's disability was a motivating factor in the discrimination." *K.H. v. Vincent Smith Sch.*, No. 06 Civ. 319 (ERK) (JO), 2006 WL 845385, at *11 (E.D.N.Y. Mar. 29, 2006) (citation and internal quotation marks omitted). Additionally, under the Rehabilitation Act, the plaintiff must show that the defendants receive federal funding. *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003) (citing *Doe v. Pfrommer*, 148 F.3d 73, 82 (2d Cir. 1998)); *see also Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 146 n.6 (2d Cir. 2002) ("Apart from the Rehabilitation Act's limitation to denials of benefits 'solely' by reason of disability and its reach of only federally funded—as opposed to 'public'—entities, the reach and requirements of both statutes are precisely the same.").

[5] The purpose of this framework is to discourage early-stage dismissal of discrimination cases without the defendant ever having to set forth its legitimate reasons for the adverse action taken against the plaintiff. *Dawson v. N.Y.C. Transit Auth.*, 624 F. App'x 763, 770 (2d Cir. 2015) (summary order) (citing *Littlejohn*, 795 F.3d at 306–08).

that at the pleading stage, a plaintiff need not plead facts giving plausible support to the "ultimate question" of whether an adverse action was attributable to discrimination; rather, the facts need only give plausible support to a "minimal inference" of discriminatory motivation. *Id.* at 311. The Court has since further clarified that "the inference of discriminatory intent supported by the pleaded facts [need not] be *the most plausible* explanation of the defendant's conduct. It is sufficient if the inference of discriminatory intent is plausible." *Doe v. Columbia Univ.*, Nos. 15-1536, 15-1661, 2016 WL 4056034, at *8 (2d Cir. July 29, 2016) (emphasis in original); *see also Dawson v. N.Y.C. Transit Auth.*, 624 F. App'x 763, 770 (2d Cir. 2015) (summary order) ("At the pleading stage, district courts would do well to remember this exceedingly low burden that discrimination plaintiffs face . . . .").

Notwithstanding this clarification, Plaintiff's discrimination claims still fail, as Plaintiff has not raised a plausible inference that the difficulties she faced at Mandl were the result of discrimination on the basis of her PTSD. Plaintiff asserts that she was subjected to an orchestrated campaign of harassment on and off school grounds, which manifested itself primarily in other students calling her a "kook" and "coo coo." However, the Amended Complaint is completely devoid of any allegations as to how Plaintiff's PTSD manifests. The Court cannot, therefore, discern even a minimal inference that Plaintiff's harassment was directed at her disability. "[E]ven if students with disabilities are more likely to be bullied than students without disabilities, both based on their disabilities and based on other factors, a plaintiff nevertheless does not state a claim under the ADA and Section 504 absent some factual allegation linking the disability and the bullying. To hold otherwise would convert the ADA and

---

Accordingly, the burden that a plaintiff must satisfy in order to establish her initial *prima facie* case has been described as "not onerous," *Burdine*, 450 U.S. at 253, and "minimal and *de minimis*," *Woodman v. WWOR–TV, Inc.*, 411 F.3d 69, 76 (2d Cir. 2005) (citations omitted).

13

Rehabilitation Act into generalized anti-bullying statutes." *Doe v. Torrington Bd. of Educ.*, No. 15 Civ. 452 (MPS), 2016 WL 1257819, at *11 (D. Conn. Mar. 30, 2016) (quoting *Eskenazi-McGibney v. Connetquot Cent. Sch. Dist.*, 84 F. Supp. 3d 221, 233 (E.D.N.Y. 2015)).

For the same reason, Plaintiff's retaliation claims also fail.  Although Plaintiff alleges that she informed Mandl about her PTSD, and that she complained daily regarding the harassment, Plaintiff's allegations are insufficient to make plausible an inference that Mandl was aware she was complaining of unfair treatment *due to her disability* as opposed to unfair treatment generally.  "Rather, [her] allegations demonstrate that while [she] complained about bullying . . . [she] did not complain that the bullying was on account of [her] disability.  For this reason, [Plaintiff] [has] not adequately alleged 'protected activity' under the ADA and Section 504." *Eskenazi-McGibney*, 84 F. Supp. 3d at 234 (quoting *Marecheau v. Equal Employment Practices Comm'n*, No. 13 Civ. 2440 (VEC), 2014 WL 5026142, at *8 (S.D.N.Y. Sept. 30, 2014)); *see also Aspilaire v. Wyeth Pharms.*, *Inc.*, 612 F. Supp. 2d 289, 308–09 (S.D.N.Y. 2009) ("While plaintiff may have believed that she was the victim of discrimination, an undisclosed belief of such treatment will not convert an ordinary . . . complaint into a protected activity.").

Because Plaintiff may be able to cure these deficiencies in a Second Amended Complaint, she is granted leave to replead her ADA and Rehabilitation Act claims.

Defendants argue that Plaintiff has not sufficiently pleaded disability status under the Rehabilitation Act or ADA.  Doc. 72 at 9 n.13.  Both statutes define a "disabled individual" as one who (i) has "a physical or mental impairment that substantially limits one or more major life activities of such individual," (ii) has "a record of such an impairment," or (iii) is "regarded as having such an impairment."  29 U.S.C. § 705(20)(B); 42 U.S.C. § 12102(1).  The Amended Complaint contains no allegations as to how Plaintiff's PTSD "substantially limits" one or more

of her "major life activities." Plaintiff thus fails to adequately allege that she is qualified to assert ADA and Section 504 claims. *See Darcy v. Lippman*, No. 03 Civ. 6898 (KMW) (DCF), 2008 WL 629999, at *6 (S.D.N.Y. 2008).[6] Should she choose to amend her Complaint a second time, Plaintiff should address this deficiency as well.

### B. State Law Claims (Counts Five Through Thirteen)

The Amended Complaint also alleges violations of the NYSHRL, NYCHRL, NYCRL, and common law defamation. Under 28 U.S.C. § 1367(c)(3), if the Court has dismissed all of the claims over which it has original jurisdiction, it may decline to exercise jurisdiction over any non-federal claims over which it could have exercised supplemental jurisdiction.

Subject matter jurisdiction in the instant action is based on federal question jurisdiction. 28 U.S.C. § 1331. Because no federal claims remain that are subject to a merits determination by this Court, it would be inappropriate to adjudicate Plaintiff's state law claims. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well."); *McGugan v. Aldana-Bernier*, No. 11 Civ. 342 (TLM), 2012 WL 1514777, at *8 (E.D.N.Y. Apr. 30, 2012), *aff'd*, 752 F.3d 224 (2d Cir. 2014) ("[W]hen all federal claims are eliminated in the early stages of litigation, the balance of factors generally favors declining to exercise pendent jurisdiction over remaining state law claims and dismissing them without prejudice."). Therefore, all non-federal claims contained in Plaintiff's Second Amended Complaint are hereby dismissed without prejudice as well.

---

[6] In evaluating whether an impairment "substantially limits a major life activity," courts consider "(1) the nature and severity of the impairment, (2) the duration or expected duration of the impairment, and (3) the permanent or longterm impact of or resulting from the impairment." *Darcy*, 2008 WL 629999, at *6 n.8.

## V. CONCLUSION

For the reasons set forth above, Defendants' motions to dismiss are GRANTED. Plaintiff's Second Amended Complaint shall be filed, if at all, on or before October 28, 2016. The Clerk of the Court is respectfully directed to terminate the motions, Docs. 40 and 71, and to mail a copy of this Opinion and Order to Plaintiff.

Furthermore, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Opinion and Order would not be taken in good faith; therefore, *in forma pauperis* status is denied for purposes of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

It is SO ORDERED.

Dated: September 30, 2016
       New York, New York

                                                            _____
                                                            Edgardo Ramos, U.S.D.J.