USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #
DATE FILED: 6/22/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ILEEN CAIN,

                Plaintiff,

– against –

MANDL COLLEGE OF ALLIED HEALTH,
MANDL COLLEGE, INC., MEL WEINER,
STEW WEINER, and AISHA REID,

                Defendants.

**OPINION AND ORDER**

14 Civ. 1729 (ER)

Ramos, D.J.:

*Pro se* plaintiff Ileen Cain ("Plaintiff" or "Cain") was enrolled in the surgical technologist program at Mandl College of Allied Health ("Mandl") for approximately three months in 2012. She brings this action against Mandl, Mandl College, Inc. ("MCI"), Mandl's President, Mel Weiner ("M. Wiener"), its Director of Operations, Stew Weiner ("S. Weiner") and a fellow student, Aisha Reid ("Reid," and collectively, Defendants"), alleging that Defendants discriminated against her on the basis of her disability by harassing her and allowing fellow students to harass her, and by retaliating against her when she complained of the abuse. The Court dismissed Plaintiff's original complaint without prejudice on May 29, 2015, and Plaintiff subsequently filed an amended complaint ("FAC"), which the Court dismissed, again without prejudice, on September 30, 2016 (the "September 2016 Order"). Plaintiff filed a Second Amended Complaint ("SAC") on November 7, 2016. Defendants now move to dismiss the SAC with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See*

Doc. 102. For the reasons discussed below, Defendants' motion to dismiss is GRANTED. Plaintiff will not be given an opportunity to file a third amended complaint.

**I.   Background and Procedural History**

The Court presumes familiarity with the September 2016 Order, which details the facts and procedural history of this case, Doc. 89, and discusses here only those facts necessary for its disposition of the instant motion. In its September 2016 Order, the Court dismissed Plaintiff's discrimination and retaliation claims because Plaintiff failed to raise "a plausible inference that the difficulties she faced at Mandl were the result of discrimination on the basis of her Post Traumatic Stress Disorder." Doc. 89 at 13. The Court also found that Plaintiff failed to adequately allege that she qualified as a disabled individual in order to assert claims under the ADA and Section 504 of the Rehabilitation Act. Doc. 89 at 14.

Plaintiff's SAC incorporates by reference the claims and factual allegations contained in her FAC, with the exception of the cyberstalking claim. In the SAC, Plaintiff attempts to cure the deficiencies identified by the Court in the September 2016 Order, primarily by describing how her PTSD manifests and providing definitions of the terms "coo coo" and "kook," the names that her fellow Mandl students allegedly used to harass her. Doc. 95.

**II.   Legal Standard**

When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). The court is not required to credit "mere conclusory statements" or "thread bare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555 (2007)); *see also id.* at 681 (citing *Twombly*, 550 U.S. at 551). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 680.

The question in a Rule 12 motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 278 (2d Cir. 1995)) (internal quotation marks omitted). "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits,'" and without regard for the weight of the evidence that might be offered in support of Plaintiff's claims. *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)).

The same standard applies to motions to dismiss *pro se* complaints. *See Zapolski v. Fed. Republic of Germany*, 425 F. App'x 5, 6 (2d Cir. 2011). The Court remains obligated to construe a *pro se* complaint liberally, *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011), and to interpret a *pro se* plaintiff's claims as raising the strongest arguments that they suggest. *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006). The obligation to be lenient while reading

3

a *pro se* plaintiff's pleadings "applies with particular force when the plaintiff's civil rights are at issue." *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)). "However, even *pro se* plaintiffs asserting civil rights claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a right to relief above the speculative level." *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). A *pro se* plaintiff's pleadings still must contain "more than an unadorned, the defendant-unlawfully-harmed me accusation." *Iqbal*, 566 U.S. at 678. A complaint that "tenders naked assertion[s] devoid of further enhancement" will not suffice. *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted); *see also Triestman*, 470 F.3d at 477 ("[P]*ro se* status 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'") (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). Additionally, as the Second Circuit has noted, "[a] district court deciding a motion to dismiss *may* consider factual allegations made by a *pro se* party in his papers opposing the motion." *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) (emphasis added).

### III. Discussion

#### A. Claims for Discrimination and Retaliation in Violation of the ADA and the Rehabilitation Act.

Plaintiff alleges that Defendants violated her rights under Tittle III of the ADA and Section 504 of the Rehabilitation Act. Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of a disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns . . . or operates a place of public accommodation." 42 U.S.C. § 12182(a). Correspondingly, Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability,

4

be excluded from the participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

To establish a *prima facie* violation of these Acts, a plaintiff must demonstrate: (1) "that she is a qualified individual with a disability;" (2) that the defendants are subject to one of the Acts;" and (3) "that she was denied the opportunity to participate in or benefit from defendants' services, program, or activities, or was otherwise discriminated against by defendants, by reason of her disability." *Harris v. Mills*, 572 F.3d 66, 73–74b (2d Cir. 2009) (quoting *Powell v. Nat'l Bd of Med. Examiners*, 364 F. 3d 79, 85 (2d Cir.), *opinion corrected*, 511 F3d 238 (2d Cir. 2004)). To state a claim for retaliation under the Acts, a plaintiff must establish that: (1) she "was engaged in protected activity;" (2) "the alleged retaliator knew that plaintiff was involved in protected activity;" (3) "an adverse decision or course of action was taken against plaintiff;" and (4) "a causal connection exists between the protected activity and the adverse action." *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 148 (2d Cir. 2002) (citation and internal quotation marks omitted).[1]

As a preliminary matter, in order to bring ADA and Section 504 claims, Plaintiff must demonstrate that she is a qualified individual with a disability.[2] In the September 2016 Order,

---

[1] As the Court noted in its previous orders in this case, although the elements of ADA and Rehabilitation Act claims are substantially identical, there is one notable difference: "[U]nder the Rehabilitation Act, the defendant must have discriminated against the plaintiff solely because of the plaintiff's disability, whereas under the ADA, it is enough if the plaintiff's disability was a motivating factor in the discrimination." *K.H. v. Vincent Smith Sch.*, No. 06 Civ. 319 (ERK) (JO), 2006 U.S. Dist. LEXIS 22412, 2006 WL 845385, at *11 (E.D.N.Y. Mar. 29, 2006) (citation and internal quotation marks omitted). Additionally, under the Rehabilitation Act, the plaintiff must show that the defendants receive federal funding. *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003) (citing *Doe v. Pfrommer*, 148 F.3d 73, 82 (2d Cir. 1998)); *see also Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 146 n.6 (2d Cir. 2002) ("Apart from the Rehabilitation Act's limitation to denials of benefits 'solely' by reason of disability and its reach of only federally funded—as opposed to 'public'—entities, the reach and requirements of both statutes are precisely the same.").

[2] The ADA and Section 504 of the Rehabilitation Act define a "disabled individual" as a person who (i) has "a physical or mental impairment that substantially limits one or more major life activities of such individual," (ii) has "a record of such an impairment," or (iii) is "regarded as having such an impairment." 29 U.S.C. § 705(20)(B); 42

the Court found that Plaintiff failed to adequately allege that she is a disabled individual as defined by the ADA and the Rehabilitation Act because the FAC contained "no allegations as to how her PTSD substantially limits one or more of her major life activities." Doc. 89 at 14-15.

The SAC fares no better in that Plaintiff again fails to explain the extent to which any major life activity has been substantially limited by her PTSD. In the SAC, Plaintiff alleges that she has "experienced physical symptoms such as insomnia and loss of appetite as well as confusion, and obsessive thinking over the future." Doc. 95 at 6. However, Plaintiff fails to allege any specific facts connecting her symptoms to any limitation of her major life activities. Plaintiff's allegations merely track the language of the statute noting that her PTSD substantially limits one or more of "Plaintiff['s] major life activities such as eating, sleeping, working, attending school or even participating in the basic functions of life, such as eating and sleep, employment, and education." *Id.* Vague, conclusory assertions without details on how her condition actually affects a major life activity are insufficient. *See Hallgren v. Bell Atl. Corp.*, No. 99 Civ. 11937 (CM)(GAY), 2000 WL 726496, at *1 (S.D.N.Y. May 30, 2000) ("Rather than specify how her ailments affect her major life activities, Plaintiff merely parrots the statutory language stating that her impairments substantially limit one or more of plaintiff's major life

---

U.S.C. § 12102(1). "Substantially limits" means "(i) unable to perform a major life activity that the average person in the general population can perform; or (ii) significant restriction as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition manner or duration under which the average person in the general population can perform that same major life activity." *Pierce v. Highland Falls-Fort Montgomery Cent. Sch. Dist.*, No. 08 Civ. 1948 (RKE), 2011 WL4526520, at *7 (S.D.N.Y. Sept. 28, 2011) (quoting 29 C.F.R. § 163.2(j)(1)). "Major life activities" include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C.A. § 12102. "Factors to consider in determining whether a major life activity is substantially limited include: the nature and severity of the impairment; its duration or expected duration; and the existence of any actual or expected permanent or long term impact. . . . the mere fact that an impairment requires an individual to perform a task differently from the average person does not mean that she is disabled within the meaning of the ADA; rather, there must be a significant restriction." *Capobianco v. City of N.Y.*, 422 F.3d 47, 56-57(2d Cir. 2005).

activities"). For instance, Plaintiff does not provide any factual support detailing the frequency, duration, or severity of any limitations on a life activity caused by her PTSD. *See e.g., Kelly v. N.Y. State office of Mental health*, No. 13cv3383KAMSLT, 2016 WL 4203470, at *8–9 (E.D.N.Y. Aug. 9, 2016) ("Conclusory statements regarding sleep difficulties are therefore insufficient to adequately allege a substantial limitation. . . . Plaintiff does not provide any further factual support for her purported sleep problems in the Second Amended Complaint. She does not describe in any detail the frequency, duration or severity of [her] sleep impairment or actually state that her alleged impairments cause [her] sleep impairment.") (internal quotation marks and citation omitted). Accordingly, Plaintiff has failed to allege sufficient facts to establish that she is qualified as a "disabled person" in order to bring ADA and Section 504 claims.

Even if Plaintiff had adequately alleged that she is qualified to bring claims under the ADA and Section 504, she nevertheless fails to plead sufficient facts to survive Defendants' motion to dismiss her discrimination claims. In the September 2016 Order, the Court dismissed Plaintiff's discrimination claims because Plaintiff failed to raise a plausible inference that the difficulties she faced at Mandl were the result of discrimination on the basis of her PTSD. Doc. 89 at 13. The Court noted that the FAC was completely "devoid of any allegations as to how Plaintiff's PTSD manifest." *Id.*

Plaintiff has failed to cure these deficiencies as well. Plaintiff contends that she was subjected to an orchestrated campaign of harassment by students who called her a "kook" and "coo coo." Doc. 95 at 3. Plaintiff goes on to describe how her disability manifests as feelings of sadness, insomnia, loss of appetite, confusion, and obsessive thinking. *Id.* at 5. She also provides dictionary definitions for the term "kook" or "coo coo," noting that they refer to

7

someone exhibiting "behavior that is described as outrageous or eccentric, insane or crazy." Doc. 108, at 16. However, Plaintiff does not demonstrate how the definition of "kook" or "coo coo" correlate to any of her PTSD symptoms. Accordingly, the Court is unable to determine even a minimal inference that the harassment that Plaintiff suffered was as a result of her PTSD.

Regarding Plaintiff's retaliation claim, the Court previously found that Plaintiff's allegations were "insufficient to make plausible an inference that Mandl was aware she was complaining of unfair treatment *due to her disability* as opposed to unfair treatment generally." Doc. 89 at 14. To successfully make a claim of retaliation, Plaintiff must allege that she complained to Mandl that she was being harassed *on account of* her disability. *See Eskenazi-McGibney v. Connetquot Cent. Sch. Dist.*, No. 14 Civ. 1591 (ADS) (GRB), 2015 WL 500871, at *11 (E.D.N.Y. Feb. 6, 2015) (finding that although parents complained about bullying of their child, they failed to adequately allege a "protected activity" under the ADA and § 504 because they did not complain that the bullying was on account of his disability).

In the SAC, Plaintiff alleges that she was terminated because she told M. Weiner that Reid "organized and orchestrated disability harassment referring to Plaintiff as a kook and coo." Doc. 95 at 7. However, Plaintiff's various pleadings fail to describe how being taunted by her classmates is connected to her PTSD. Similarly, Plaintiff has not alleged any facts suggesting that Defendants had any basis to connect the specific facts of the alleged harassment to Plaintiff's PTSD. Elsewhere in the SAC, Plaintiff states that she told "Defendant Mel Weiner that the harassment she experienced by Mandl students was due to her disability." While Plaintiff purports to allege that she put Defendants on notice that she was being harassed on account of her disability, there is no indication in the SAC that Defendants were aware of any connection between the alleged name-calling and Plaintiff's PTSD.

8

Accordingly, Defendants' motion to dismiss Plaintiff's discrimination and retaliation claims under the ADA and Section 504 is GRANTED.

### B. Due Process Claims

In the SAC, Plaintiff alleges that Defendants violated her procedural and substantive due process rights under the Fourteenth Amendment of the U.S. Constitution. Doc. 95 at 7; Doc. 108 at 20 ("Defendants furthered their adversity by violating Plaintiff's due process rights."). "As a general matter the protections of the Fourteenth Amendment do not extend to private conduct abridging individual rights." *NCAA v. Tarkanian*, 488 U.S. 179, 191 (1988) (internal quotation marks and citations omitted). Only under certain circumstances will a private actor be considered a state actor. *Id.* Private action can be considered state action only when there is "such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (internal quotation marks and citation omitted). Thus, in order to bring a due process claim, Plaintiff must allege state action. *See, e.g., Clarke v. Intercontinental Hotels Grps., PLC*, No. 12 Civ. 2671, 76208, 2013 WL 2358596, at *8 (S.D.N.Y. May 30, 2013) ("Fourteenth Amendment claims fail because, among other things, Defendant is a private entity and there is no allegation of state action."); *Kashelkar v. Rubin & Rothman*, 97 F. Supp. 2d 383 (S.D.N.Y. 2000) ("The § 1983 allegations fail to state a claim because Plaintiff has not and cannot plead state action, nor has he identified a constitutionally protected right that was violated.").

Plaintiff fails to allege any facts suggesting that Mandl is a state actor or that its conduct should be considered state action for purposes of a due process claim. Accordingly, Plaintiff's due process claim is DISMISSED.

C. **State Law Claims**

Plaintiff's SAC alleges violations of the NYSHRL, NYCHRL, NYCRL, and common law defamation. Doc. 95. Plaintiff also attempts to add a claim of intentional infliction of emotional distress in her opposition to Defendants' motion to dismiss. Doc. 108. Under 28 U.S.C. § 1367(c)(3), if the Court has dismissed all of the claims over which it has original jurisdiction, it may decline to exercise jurisdiction over any non-federal claims over which it could have exercised supplemental jurisdiction.

Subject matter jurisdiction in the instant action is based on federal question jurisdiction. 28 U.S.C. § 1331. Because no federal claims remain that are subject to a merits determination by this Court, it would be inappropriate to adjudicate Plaintiff's state law claims. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well."); *McGugan v. Aldana-Bernier*, No. 11 Civ. 342 (TLM), 2012 WL 1514777, at *8 (E.D.N.Y. Apr. 30, 2012), aff'd, 752 F.3d 224 (2d Cir. 2014) ("[W]hen all federal claims are eliminated in the early stages of litigation, the balance of factors generally favors declining to exercise pendent jurisdiction over remaining state law claims and dismissing them without prejudice."). Therefore, all non-federal claims contained in Plaintiff's SAC are hereby dismissed.

D. **Leave to Amend**

The Second Circuit has instructed Courts not to dismiss a complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Shabazz v. Bezio*, 511 F. App'x 28, 31 (2d Cir. 2013) (internal quotation marks and citation omitted). The Court has granted Plaintiff two opportunities to amend her complaint and she has failed to cure the deficiencies. Accordingly, the SAC is dismissed with prejudice.

## IV. Conclusion

For the reasons set forth above, Defendants' motion to dismiss is GRANTED. Plaintiff will not be granted leave to amend. The Clerk of the Court is respectfully directed to terminate the motion, Doc. 102, mail a copy of this Opinion and Order to Plaintiff and close the case.

Furthermore, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Opinion and Order would not be taken in good faith; therefore, *in forma pauperis* status is denied for purposes of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

It is SO ORDERED.

Dated: June 22, 2017
       New York, New York

                                           Edgardo Ramos, U.S.D.J.